UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY L. FISHER,<br><br>                Plaintiff,<br><br>v.<br><br>CAMDEN COUNTY CORRECTIONAL FACILITY, *et. al.*,<br><br>                Defendants. | Civil Action No. 21-13212 (JXN) (CLW)<br><br>OPINION |

**NEALS**, District Judge:

This matter comes before the Court on Defendant C.F.G. Health Systems, LLC[1] ("C.F.G. Health Systems") and Dr. Robin Clemons' ("Clemons") (together, the "Moving Defendants") motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 and L. Civ. R. 56.1. (ECF No. 61). Plaintiff Gregory L. Fisher ("Plaintiff"), a pretrial detainee currently incarcerated at Burlington County Jail, in Mount Holly, New Jersey, opposed (ECF No. 67), and Moving Defendants replied. (ECF No. 68). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343, and venue pursuant to 28 U.S.C. § 1391. The Court has carefully considered the parties' submissions and decides this matter without oral argument under Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons below, Moving Defendants' motion for summary judgment (ECF No. 61) is **GRANTED** in part and **DENIED** in part. Count Two in Plaintiff's Second Amended Complaint (ECF No. 44) is **DISMISSED with prejudice**. All other relief is **DENIED**.

---

[1] Defendant C.F.G. Health Systems, LLC is listed on the docket as C.F.G. Medical Enterprise.

I. **BACKGROUND AND PROCEDURAL HISTORY**[2]

This action arises from Plaintiff's medical care received while detained at Camden County Correctional Facility ("CCCF"). (ECF No. 61-2, Defendants' Statement of Undisputed Material Facts ("DSOMF[3]") ¶ 6.) Plaintiff's Second Amended Complaint (ECF No. 44) (the "SAC") alleges that Clemons, medical director for C.F.G. Health Systems, injured Plaintiff when he discontinued Plaintiff's suboxone[4] on November 2, 2020. (*Id.*) The relevant facts follow.

On June 2020, Plaintiff arrived at CCCF following hospitalization for an overdose. (*Id.* ¶ 57.) Upon arrival, Plaintiff consented to opiate. (*Id.* ¶ 10.) Plaintiff also agreed not to misuse or abuse suboxone. (*Id.* ¶ 11.) Plaintiff received suboxone in June 2020 and July 2020. (*Id.* ¶¶ 12, 17.) In June and July 2020, Plaintiff refused his suboxone doses. (*Id.* ¶¶ 13, 18.) But continued to receive suboxone in August, September, and October 2020. (*Id.* ¶¶ 19, 21, 23.)

Moving Defendants submit that Plaintiff was hoarding his suboxone dose on August 20, 2020, causing his suboxone strips to be discontinued and replaced by crushed suboxone tablets. (*Id.* ¶ 20.) Plaintiff denies hoarding suboxone stripes in August 2020 (*see* ECF No. 67-2, Plaintiff's Statement of Material Facts ("PSOMF") ¶ 1), and submits that he and other inmates were harassed by the suboxone distribution nurses and threatened that they would be denied suboxone if they did not "act right." (*Id.* ¶ 2.) Plaintiff also denies diverting his suboxone tablets. (PSOMF ¶ 4.)

On October 21, 2020, Clemons was advised that Plaintiff had multiple episodes of attempting to divert his suboxone medication. (DSOMF ¶ 24.) As a result, the CCCF's Director of Nursing requested that Plaintiff "be removed from the suboxone program." (DSOMF ¶ 25.)

---

[2] For brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.
[3] Defendants' Responsive Statement is found at (ECF No. 67-1.) The facts referenced here cite only to the DSOMF.
[4] Suboxone contains a combination of buprenorphine and nalozone. Buprenorphine is an opioid medication, sometimes called a narcotic. Naloxone blocks the effect of opioid medication, including pain relief or feelings of well-being that can lead to opioid abuse. *See* www.drugs.com/subozone.html. (*Id.* ¶ 6, n.1.)

Plaintiff denies these allegations and alleges that Sergeant Kelly informed him "that the medical department wanted to stop his suboxone because he had been having problems with the nurses, and because he was arousing other inmates during suboxone distribution." (PSOMF ¶ 6.) Clemons "decided to gradually wean Plaintiff off the suboxone and discontinue him from the program. . . ." (*Id.* ¶ 26.) On November 1, 2020, Plaintiff received his last dose of suboxone. (*Id.* ¶ 27.) Plaintiff then filed grievances claiming his suboxone was discontinued. (PSOMF ¶ 9.)

On November 18, 2020, Clemons saw Plaintiff for a follow-up regarding his suboxone medication. (*Id.* ¶ 30.) Moving Defendants submit that Clemons recounted Plaintiff's episodes of medication hoarding at this follow-up appointment. (*Id.* ¶ 31.) Plaintiff disputes this allegation, and claims Clemons told him that he "was terminating his suboxone" because "he was giving her nurses a problem when distributing to suboxone. . . ." (PSOMF ¶ 11.) On March 9, 2021, Clemons met Plaintiff and "offered sublocade, an injectable form of suboxone then available. . . ." (DSOMF ¶ 49.) (footnote omitted). Plaintiff informed Clemons that his physician recommended suboxone over sublocade. (ECF No. 61-9, Pl.'s Dep., at T61:25-63:23.) On May 5, 2021, Plaintiff "reported he had been taken off suboxone against his will and requested that it be restarted." (PSOMF ¶ 12.) In July 2022, Plaintiff was transferred from CCCF to Mercer County Correctional Facility. (ECF No. 61-9, Pl.'s Dep. at T54:3-8.)

On March 29, 2023, Plaintiff filed the SAC, raising the following claims: (1) a Fourteenth Amendment claim against Clemons for "deliberate indifference to a serious medical need" (Count One); (2) a § 1983 *Monell*[5] claim against C.F.G. Health Systems for "promulgat[ing]" a policy "to deny medical care to Plaintiff for his serious medical need" (Count Two); (3) a § 1983 supervisory

---

[5] *Monell v. New York City Dep't. of Social Servs.*, 436 U.S. 658 (1978).

liability claim against Defendants Sergeant Tiffany Deangelis and CCCF's Warden Karen Taylor ("Taylor") (Count Three); and (4) a § 1983 *Monell* claim against Taylor (Count Four).[6]

In their summary judgment motion, Moving Defendants argue in part that: (i) Plaintiff fails to produce sufficient evidence by which a reasonable jury could find they were deliberately indifferent to Plaintiff's serious medical needs; (ii) Moving Defendants are not vicariously liable for an individual's wrongful acts; and (iii) Plaintiff does not have viable punitive damages claim. (*See gen.,* ECF No. 61-3.)  Plaintiff opposed the motion (ECF No. 67), and Moving Defendants replied.  (ECF No. 68).  This matter is now ripe for consideration.

## II.     LEGAL STANDARD

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party[;]" and "is material only if it might affect the outcome of the suit under governing law."  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). The moving party bears the "initial responsibility" of demonstrating the "absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The nonmoving party "must [then] counter with specific facts which demonstrate that there exists a genuine issue for trial."  *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citation omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. . . ."  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted).  Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party."  *Boyle v. Cnty. of Allegheny*, 139 F.3d 386,

---

[6] Because the Moving Defendants seek summary judgment only on Counts One and Two, this Opinion does not analyze Counts Three and Four.  (*See* ECF No. 61.)

4

393 (3d Cir. 1998) (citation omitted). And credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Thus, the court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.   DISCUSSION

#### A.   The Fourteenth Amendment Claim Against Clemons (Count One)

Moving Defendants argue they are entitled to summary judgment because Plaintiff failed to produce sufficient evidence to show Clemons acted with deliberate indifference to Plaintiff's serious medical needs. (ECF No. 61-3 at 7-21.[7]) The Court disagrees.

A pretrial detainee's "claim for inadequate medical care . . . aris[es]" under the Fourteenth Amendment rather than the Eighth Amendment. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003). The United States Supreme Court has held that the "Fourteenth Amendment affords pretrial detainees protections at least as great" as those afforded to convicted prisoners under the Eighth Amendment. *See id.* (internal quotation marks and citation omitted). Thus, the Third Circuit applies the same standard established in *Estelle v. Gamble*, 429 U.S. 97 (1976) "(pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment." *See id.* (citation omitted).

The Eighth Amendment prohibits States from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle*, 429 U.S. at 103–04. "In order to state a cognizable claim" for a violation

---

[7] The Court refers to the ECF page numbers in this Opinion.

5

of a prisoner's right to adequate medical care, the prisoner must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

A serious medical need means "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks and citations omitted). A serious medical need may also be demonstrated by conditions which, if untreated, would "cause an inmate to suffer a lifelong handicap or permanent loss . . . ." *Id.* at 347 (citations omitted).

A "prison official cannot be found liable . . . for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. . . ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In other words, a showing of deliberate indifference requires "some more culpable state of mind . . . ." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In this context, a plaintiff establishes deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Id.* at 197 (citation omitted).

Here, Moving Defendants argue Plaintiff fails to set forth evidence demonstrating that their actions amounted to deliberate indifference by "simply claim[ing] that he did not receive the treatment and/or results he wanted in a time frame he wanted." (ECF No. 61-3 at 9, 21.) However, Moving Defendants misconstrue the claim. Plaintiff does not allege that Clemons rendered inadequate medical care. Rather, Clemons denied his medication based on a non-medical reason.

6

In support of their argument, Moving Defendants cite Plaintiff's August 19, 2020, September 18, 2020, and October 21, 2020, medical records where suboxone hoarding and diversion were noted. (*See* ECF No. 61-3 at 10 - 11) (citatons omitted). Specifically, Moving Defendants cite the following note from Clemons:

> I was called by the [Director of Nursing ("DON")] while doing sick call on 5 center about [Plaintiff's] participation in the suboxone program. He had multiple episodes of displaying behavior that he was attempting to divert this medication. Sgt. Kelly held a meeting with the DON requesting that this patient be taken off of the program. The plan is to wean him gradually off of suboxone and th[e]n discontinue it entirely. The patient will still be offered a carting dose and a prescription on discharge.

ECF No. 61-3 at 11. Moving Defendants also provide Clemons' interrogatory answer, where she indicated that she was "advised by the Director of Nursing [] that [Plaintiff] had another episode of diverting his daily medication [and] [t]here was concern for a potential overdose by [Plaintiff]. [Plaintiff] was weaned off suboxone and then discontinued the remainder of his detention." (*Id.* at 15) (citation omitted). Moving Defendants argue that this evidence shows Plaintiff was properly evaluated and treated.

In opposition, Plaintiff argues that his claim is based on Clemons denying medical treatment that was once prescribed for non-medical reasons. (ECF No. 67 at 4.) To that end, Plaintiff argues Clemons denied his previously prescribed treatment for non-medical reasons- "in reprisal for [Plaintiff's] speech to the nurses during suboxone distribution, saying they must distribute suboxone to inmates regardless of how the inmates were acting." (*Id.* at 5.) In support, Plaintiff points the Court to the following colloquy during his deposition testimony :

> Q. And did there come a time in August of 2020 where you were thought to be diverting suboxone?
>
> A. Yes. I don't remember th[e] actual day it was, but yes.

7

> Q. What happened on that day?
>
> A. The officer - - witnessed me sneeze or something. I can't actually remember what really she thought or believed that was taking place, but she thought I had spit[] my suboxone out.
>
> Q. That was a corrections officer?
>
> A. Yes.
>
> Q. Did it involve any cotton in your mouth?
>
> A. I don't think so. I guess, yes.
>
> Q. I am only asking. If you don't recall you can say you don't recall.
>
> A. I don't remember the actual date because it was two times that I actually remember where I was being harassed with taking my suboxone due to other reasons. But harassment was clearly evident and things being said [weren't] true. And I guess one of the nurses did make that claim that Mr. Fisher has something in his mouth.
>
> The date, I don't actually remember but I already made several reports to the shift commander - - I mean the supervisor that it's being a hostile environment giving these medications out. We are being taunted and if you don't act right, I'm not giving you your meds is how they treat all of patient as if, you know, you giving us a reward. I would speak up and say that this has nothing to do with anyone's behavior or whatever. You still have to give the people the meds and whatever you don't like or being created as a problem, you taunt them with their medication. You took a report and you have a disciplinary problem. You supposed to record it. You have disciplinary procedures and whatever the outcome may be. Mr. Fisher, shut up, and things of that nature. No. You shut up.

(ECF No. 67-3, Pl.'s Dep. at T32:19 to 34:8.)  Plaintiff also testified that Sergeant Kelly told him they wanted to stop his suboxone because he was having problems with the nurses.  (*Id.*, at T36:21 to 38:8.)  Moreover, that she was terminating his suboxone because she "under[stood] [Plaintiff] was giving [her] nurses a problem when distributing the suboxone." (*Id.*, at T42:12-14.)

Consequently, there remains a genuine issue of material fact regarding whether Clemons removed Plaintiff from the suboxone program for a non-medical reason.  At the summary judgment

8

stage, Moving Defendants must demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. They failed to do so here. Specifically, Moving Defendants failed to show that Plaintiff lacks evidence to support his assertion that Clemons denied him suboxone for non-medical reasons. Indeed, Moving Defendants did not address Plaintiff's deposition testimony. Thus, summary judgment is denied as to Count One.

### B. The *Monell* Claim Against C.F.G. Health Systems (Count Two)

Moving Defendants contend Count Two should be dismissed against Defendant C.F.G. Health Systems. (ECF No. 61-3 at 21-23.) The Court agrees.

Under § 1983, a "private corporation" contracted by a prison to "provide health care services" for inmates cannot be held liable on the theory of *respondeat superior*. *Weigher v. Prison Health Servs.*, 402 F. App'x 668, 669-70 (3d Cir. 2010). Rather, a healthcare provider is subject to liability under Section 1983 only if it "had a policy or custom that caused [the] deprivation of a constitutional right." *Defreitas v. Montgomery Cnty. Corr. Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) (citations omitted); *see also Perry v. Well-Path*, No. 20-2542, 2021 WL 229398, at *4 (E.D. Pa. Jan. 22, 2021) ("[T]o hold a private health care company . . . liable for a [] violation under § 1983, a prisoner must allege the provider had a relevant policy or custom, and that the policy caused the [] violation. . . .") (internal quotation marks, brackets, and citations omitted).

"A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of § 1983." *Porter v. City of Philadelphia*, 975 F.3d 374, 383 (3d Cir. 2020). A "pertinent decision by an official with final decision-making authority on the subject constitutes an official policy." *Id.* at 383 (footnote omitted). However, "if the conduct was simply that of an individual employee who was not acting pursuant to a policy or custom, that conduct cannot give rise to" a cognizable *Monell* claim. *Id.* at 383.

Here, C.F.G. Health Systems argues they are entitled to summary judgment because Plaintiff failed to proffer evidence of a relevant policy or custom, and that that policy or custom caused the purported constitutional violation. (ECF No. 61-3 at 23.). In the SAC, Plaintiff alleges Clemons "was a high-enough-ranking official so that the policies she promulgated could be said to be the policies promulgated by" C.F.G. Health Systems. (SAC ¶ 44). In opposition, Plaintiff contends Clemons had "final decision-making authority for medical matters" such that her decision "would bind" C.F.G. Health Systems. (ECF No. 67 at 7.) This is insufficient.

"The fact that a particular official has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Porter*, 975 F.3d at 385 (internal quotation marks, ellipses, and footnote omitted). Instead, "the official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 385 (internal quotations marks, brackets, and footnote omitted). Indeed, the official's policy authority must be "final and unreviewable." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (citations omitted) (emphasis removed).

Plaintiff fails to point to any evidence showing Clemons responsible for establishing C.F.G Health Systems' final policy regarding the distribution of suboxone. *Porter*, 975. F.3d at 385. The record also lacks evidence that Clemon's decisions were final and unreviewable by C.F.G. Health Systems. *Hill*, 455 F.3d at 245. Moreover, Plaintiff fails to cite evidence that Clemons' decision to remove Plaintiff from the suboxone program was based on any existing policy or custom. Accordingly, a medical decision relevant to Plaintiff alone, does not establish that C.F.G. Health Systems had a policy or custom of denying inmates medication for non-medical reasons. Thus, summary judgment is granted as to Count Two, which is dismissed with prejudice.

### C. The Punitive Damages Claim

Moving Defendants argue Plaintiff's punitive damages claim must be dismissed because Plaintiff failed to show Clemons' conduct "was wantonly reckless or callous so as to warrant an award of punitive damages." (ECF No. 61-3 at 30.) The Court disagrees.

Punitive damages are available against individual defendants in a Section 1983 case when there is evidence that the defendant's conduct was "motivated by evil motive or intent" or when the defendant acted with "reckless or callous indifference" to a person's federally protected rights. *Alexander v. Riga*, 208 F.3d 419, 430-31 (3d Cir. 2000) (internal quotation marks and citation omitted). Because the Court found Plaintiff produced evidence of a non-medical reason for the denial of his suboxone, the punitive damages claim is not appropriate for dismissal.

### IV. CONCLUSION

For the reasons set forth above, Moving Defendants' motion for summary judgment (ECF No. 61) is **GRANTED** in part and **DENIED** in part. Count Two in Plaintiff's Second Amended Complaint (ECF No. 44) is **DISMISSED with prejudice**. All other relief is **DENIED**. An appropriate Order accompanies this Opinion.

DATED: September 13, 2024

HONORABLE JULIEN XAVIER NEALS
United States District Judge