UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY L. FISHER,<br><br>Plaintiff,<br><br>v.<br><br>CAMDEN COUNTY CORRECTIONAL FACILITY, *et al.*,<br><br>Defendants. | Civ. Action No. 21-13212 (JXN) (CLW)<br><br>OPINION |

**NEALS, District Judge**

This matter comes before the Court on Defendants County of Camden, Warden Karen Taylor ("Taylor"), and Sergeant Tiffany DeAngelis ("DeAngelis") (together, the "Moving Defendants") motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 and L. Civ. R. 56.1. (ECF No. 77.) Plaintiff Gregory L. Fisher ("Plaintiff"), a pretrial detainee currently incarcerated at Burlington County Jail, in Mount Holly, New Jersey, opposed. (ECF No. 79.) Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343, and venue pursuant to 28 U.S.C. § 1391. The Court has carefully considered the parties' submissions and decides this matter without oral argument under Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons below, Moving Defendants' motion for summary judgment is **GRANTED**.

## I.       BACKGROUND AND PROCEDURAL HISTORY[1]

This action arises from Plaintiff's medical care received while detained at Camden County Correctional Facility ("CCCF"). (ECF No. 77-3, Defendants' Statement of Undisputed Material Facts ("DSOMF") ¶ 6.) Plaintiff's Second Amended Complaint (ECF No. 44, the "SAC") alleges that Defendant Dr. Robin Clemons ("Clemons"), medical director for C.F.G. Health Systems, injured Plaintiff when she discontinued Plaintiff's suboxone[2] on November 2, 2020. (*Id.*)

On June 2020, Plaintiff arrived at CCCF following hospitalization for an overdose. (DSOMF ¶ 57.) Upon arrival, Plaintiff consented to opiate treatment. (*Id.* ¶ 10.) Plaintiff also agreed not to misuse or abuse suboxone. (*Id.* ¶ 11.) Plaintiff received suboxone in June 2020 and July 2020, unless refused. (*Id.* ¶¶ 12, 17.) On June 5, 6, 8, 9, and 11, and July 22 and 27, 2020, Plaintiff refused his suboxone doses. (*Id.* ¶¶ 13, 18.) However, he resumed receiving suboxone in August, September, and October 2020. (*Id.* ¶¶ 19, 21, 23.)

Moving Defendants submit that Plaintiff was hoarding his suboxone dose on August 20, 2020, causing his suboxone strips to be discontinued and replaced by crushed suboxone tablets. (*Id.* ¶ 20.) Plaintiff denies hoarding suboxone stripes in August 2020 (*see ECF* No. 79-2, Plaintiff's Statement of Material Facts ("PSOMF") ¶ 1), and submits that he and other inmates were harassed by the suboxone distribution nurses and threatened that they would be denied suboxone if they did not "act right." (*Id.* ¶ 2.) Plaintiff also denies diverting his suboxone tablets. (*Id.* ¶ 4.)

On October 21, 2020, Clemons was advised that Plaintiff had multiple episodes of attempting to divert his suboxone medication. (DSOMF ¶ 24.) As a result, the CCCF's Director of Nursing requested that Plaintiff "be removed from the suboxone program." (*Id.* ¶ 25.) Plaintiff

---

[1] For brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.
[2] Suboxone contains a combination of buprenorphine and nalozone. Buprenorphine is an opioid medication, sometimes called a narcotic. Naloxone blocks the effect of opioid medication, including pain relief or feelings of well-being that can lead to opioid abuse. *See* www.drugs.com/subozone.html. (*Id.* ¶ 6, n.1.)

denies these allegations and alleges that Sergeant Kelly informed him "that the medical department wanted to stop his suboxone because he had been having problems with the nurses, and because he was arousing other inmates during suboxone distribution." (PSOMF ¶ 6.) Clemons "decided to gradually wean Plaintiff off the suboxone and discontinue him from the program. . . ." (DSOMF ¶ 26.) On November 1, 2020, Plaintiff received his last dose of suboxone. (*Id.* ¶ 27.) Plaintiff then filed grievances with Camden County Correctional Facility claiming his suboxone was discontinued. (PSOMF ¶ 9.)

Plaintiff met with DeAngelis and requested that he be restarted on suboxone. (PSOMF ¶ 11.) DeAngelis stated that he would talk to Taylor and Clemons. (*Id.* ¶ 12.) In a subsequent conversation, DeAngelis informed Plaintiff that he would be placed back on suboxone; however, Plaintiff's suboxone was not restored. (*Id.* ¶¶ 14, 15.) Plaintiff submits that he also spoke with Taylor during "rounds," and mentioned the grievance Plaintiff had filed regarding his medical care. (*Id.* ¶¶ 16-17.)

On November 18, 2020, Clemons saw Plaintiff for a follow-up regarding his suboxone medication. (DSOMF ¶ 30.) Moving Defendants submit that Clemons recounted Plaintiff's episodes of medication hoarding at this follow-up appointment. (*Id.* ¶ 31.) On March 9, 2021, Clemons met Plaintiff and "offered sublocade, an injectable form of suboxone then available. . . ." (*Id.* ¶ 49.) (footnote omitted). Plaintiff informed Clemons that his physician recommended suboxone over sublocade. (ECF No. 61-9, Pl.'s Dep., at T61:25-63:23.) In July 2022, Plaintiff was transferred from CCCF to Mercer County Correctional Facility. (ECF No. 61-9, Pl.'s Dep. at T54:3-8.)

On March 29, 2023, Plaintiff filed the SAC, raising the following claims: (1) a Fourteenth Amendment claim against Clemons (Count One); (2) a § 1983 *Monell*[3] claim against C.F.G. Health Systems (Count Two); (3) a § 1983 supervisory liability claims against DeAngelis and Taylor for their "deliberate indifference to a serious medical need" (Count Three); and (4) a § 1983 *Monell* claim against Taylor for "promulgat[ing]" a policy "to ignore repeated written complaints/grievances" of an ongoing constitutional violation. (Count Four).[4]

On December 22, 2023, Defendant C.F.G. Health Systems, LLC1 ("C.F.G. Health Systems") and Dr. Robin Clemons' ("Clemons") (together "Defendants") moved for summary judgment. (ECF No. 61.) Plaintiff opposed the motion (ECF No. 67), and Defendants replied. (ECF No. 68.)

On September 13, 2024, the Court entered an Opinion and Order denying summary judgment as to Count One granted summary judgment as to Count Two against C.F.G. Health Systems and determined Plaintiff's punitive damages claim not appropriate for dismissal. (ECF Nos. 80, 81.)

In their summary judgment motion, Moving Defendants argue in part that: (i) Camden County cannot be liable under § 1983 on the basis of respondeat superior, and (ii) Plaintiff opposed the motion. (ECF No. 79.) This matter is now ripe for consideration.

**II.     LEGAL STANDARD**

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if there is a sufficient evidentiary basis on which a reasonable jury could find for the

---

[3] *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978).
[4] On September 13, 2024, the Court granted in part and denied in part Defendants C.F.G. Health Systems, LLC and Dr. Robin Clemons motion for summary judgment (ECF No. 61). (*See* ECF Nos. 80, 81.) The Court dismissed Count Two with prejudice but denied the motion as to Count One. (*See id.*)

4

non-moving party[;]" and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). The moving party bears the "initial responsibility" of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must [then] counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citation omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. . . ." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted). And credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Thus, the court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.     DISCUSSION

#### A.     The Supervisory Liability Claim against DeAngelis and Taylor (Count Three)

Moving Defendants contend Count Three should be dismissed against Defendants DeAngelis and Taylor. (ECF No. 77-2 at 12-16.) The Court agrees.

To prevail under § 1983, plaintiff must establish that each defendant had personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). It is well established that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A plaintiff may establish supervisory liability under § 1983 by

showing: (1) liability based on an establishment of policies, practices, or customs that directly caused the constitutional violation; or (2) personal liability based on the supervisor participating in the violation of the plaintiff's rights, directing others to violate the plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct. *Doe v. New Jersey Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. "Only those defendants whose inactions or actions personally caused [Plaintiff's] injury may be held liable under § 1983." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990).

Courts in the Third Circuit have repeatedly held that a prison official's role in reviewing grievances is not, without more, sufficient to establish personal involvement in the alleged constitutional injury. *See, e.g., Mincy v. Chmielsewski*, 508 F. App'x 99,104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement.") (citing *Rode*, 845 F.2d at 1207–08); *see also Sims v. Wexford Health Sources*, 635 F. App'x. 16, 19 (3d Cir. 2015) ("Prison officials who are not doctors are not liable for responding directly to prisoner medical complaints where the prisoner is under the care of medical experts.") (citation omitted).

Here, Moving Defendants argue that Plaintiff fails to set forth evidence that Defendants Taylor and DeAngelis "had any reason to believe, or actual knowledge," that Clemons provided improper medical care to Plaintiff. (ECF No. 77-2 at 16.) In opposition, Plaintiff argues that he filed grievances with the CCCF administration, concerning Clemons "ongoing decision . . . to discontinue his suboxone." (ECF No. 79 at 6.) Plaintiff claims that he informed Defendant DeAngelis that he wanted to be placed back on suboxone, and DeAngelis told Plaintiff that she would speak to Defendants Taylor and Clemons. (*Id.*) Plaintiff claims that at a subsequent meeting,

6

Defendant DeAngelis informed Plaintiff that his suboxone would be restored. (*Id.*) Further, Plaintiff argues that "one time, [Taylor] came around to [Plaintiff's] cell on rounds, and [Plaintiff] brought up his medical issue with the Warden." (*Id.*)

Plaintiff fails to provide evidence that Defendant DeAngelis was aware that Plaintiff was being denied suboxone for non-medical reasons. While Plaintiff testified that he met with Defendant DeAngelis regarding the termination of his suboxone, Plaintiff offers no testimony or evidence that DeAngelis was informed that Plaintiff's suboxone was terminated due to a non-medical reason. (*See generally* ECF No. 79-3, Pl.'s Dep.) Although there is no evidence in the record that Defendant DeAngelis did discuss Plaintiff's suboxone termination with Clemons, assuming arguendo she did so, there is no evidence that DeAngelis had reason to believe that the prison doctor was mistreating Plaintiff. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.")

Regarding Defendant Taylor, Plaintiff argues that Defendant Taylor is liable as the Warden of CCCF based on Plaintiff's filing of grievances regarding his on-going medical issues. Plaintiff testified that on one occasion Defendant Taylor "made a round" and Plaintiff informed Taylor that he filed grievances about a medical issue and received no response. (ECF No. 79-3, Pl.'s Dep. at T85:15-21.) Plaintiff also testified that he believes that "at some point" his medical issues "did come across the Warden's desk." (*Id.* at T86:15-19.) However, aside from Plaintiff's assertions that Defendant DeAngelis stated she would speak to Defendant Taylor and that "one time" Plaintiff "brought up his medical issues with the Warden," Plaintiff offers no evidence that Defendant Taylor was in any way involved in Plaintiff's grievances or aware of Plaintiff's on-going medical

7

issues. There is no evidence of record of Defendant Taylor's personal involvement in Plaintiff's medical care. *Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement.)

Plaintiff has failed to establish that Defendants Taylor and DeAngelis had knowledge of and acquiesced in any alleged violations of his Eighth Amendment rights by their subordinates. *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004). Thus, summary judgment is granted as to Count Three, which is dismissed with prejudice.

**B.     The Monell Claim Against County of Camden (Count Four)**

Moving Defendants contend Count Four should be dismissed against Defendant County of Camden. (ECF No. 77-2 at 10-12.) The Court agrees.

In *Monell*, the United States Supreme Court held that a municipality may be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible." 436 U.S. at 694. It is the plaintiff's burden "to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *B.S. v. Somerset Cty.*, 704 F.3d 250, 275 (3d Cir. 2013) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of § 1983." *Porter v. City of Philadelphia*, 975 F.3d 374, 383 (3d Cir. 2020). A "pertinent decision by an official with final decision-making authority on the subject constitutes an official policy." *Id.* at 383 (footnote and citation omitted). However, "if the conduct was simply that of an individual employee who was not acting pursuant to a policy or custom, that conduct cannot give rise to" a cognizable *Monell* claim. *Id.* at 383.

Here, Defendant County of Camden argues it is entitled to summary judgment because Plaintiff failed to proffer evidence of a relevant policy or custom, and that the policy or custom caused the purported constitutional violation. (ECF No. 77-2 at 10-12.) In the SAC, Plaintiff alleges Defendant Taylor "was a high-enough-ranking public official so that the policies promulgated could be said to be the policies promulgated by" Defendant County of Camden. (SAC ¶ 48.) In opposition, Plaintiff contends Defendant Taylor as the Warden of CCCF had "final-decision making authority for all matters" at CCCF and Taylor's "decisions, including a decision to ignore a detainee's grievances about a denial of medical care [], would bind" Defendant County of Camden. (ECF No. 79 at 8.) This is insufficient.

"The fact that a particular official has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Porter*, 975 F.3d at 385 (cleaned up). Instead, "the official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* Indeed, the official's policy authority must be "final and unreviewable." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (citations omitted) (emphasis removed).

Plaintiff fails to point to any evidence that Defendant Taylor is responsible for establishing Defendant County of Camden's final policies regarding the handling of inmate grievances. *Porter*, 975 F.3d at 385. The record also lacks evidence that Defendant Taylor's decisions were final and unreviewable to Defendant County of Camden. *Hill*, 455 F.3d at 245. Moreover, Plaintiff fails to cite evidence that Defendant Taylor's failure to respond to Plaintiff's grievances was based on any existing policy or custom. Accordingly, a lack of grievance response relevant to Plaintiff alone, does not establish that Defendant County of Camden had a policy or custom of failing to respond

9

to inmate grievances. Thus, summary judgment is granted as to Count Four, which is dismissed with prejudice.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Moving Defendants' motion for summary judgment (ECF No. 77) is **GRANTED**. Counts Three and Four in Plaintiff's Second Amended Complaint (ECF No. 44) are **DISMISSED with prejudice**. An appropriate Order accompanies this Opinion.

DATED: February 18th, 2025

_____
JULIEN XAVIER NEALS
United States District Judge